**M.W. AUDISH, et al., Appellants,**

v.

**CLAJON GAS COMPANY, Appellee.**

**No. C14–86–270–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 7, 1987.

Rehearing Denied May 28, 1987.

Richard L. McElya, Angleton, for appellants.

Thomas L. Schubert, Houston, Michael J. Simmang, Giddings, for appellee.

Before JUNELL, ELLIS and DRAUGHN, JJ.

JUNELL, Justice.

Appellants, M.W. Audish and his wife, Doris Jane Audish, appeal from the judgment of the trial court in a condemnation proceeding. Appellee, the condemnor Clajon Gas Company, was granted a permanent natural gas pipeline easement 60 feet in width across appellants' rural property. The easement encompasses 2.26 of 52 acres.

In eleven points of error, appellants assert that the trial court erred (i) in failing to award appellants treble damages for fees and expenses incurred when the first of two condemnation suits brought by Clajon was dismissed, (ii) in granting partial summary judgment to appellee on the issue of Clajon's right to take the easement, (iii) in refusing to bar the suit with respect to Mrs. Audish, (iv) in refusing to set the date of deposit of the cost bond as the date of taking, (v) in refusing to deem appellants' request for admissions as admitted, and (vi) in refusing to disqualify the law firm of Simmang, Boethel and Hall as counsel for Clajon. We affirm.

Mr. M.W. Audish is the record title owner of a 52 acre tract of land in Washington County. Clajon Gas Company is a "gas corporation" as defined by Tex.Rev.Civ. Stat.Ann. art. 1435 (Vernon 1980) and is thereby vested with the right of eminent domain. In March 1981, Clajon contacted Mr. Audish to discuss a pipeline easement across the property for the transportation of natural gas, crude oil, or related petroleum products and equipment. Mr. Audish directed that all communication regarding the property be conducted through his attorney, Mr. Richard L. McElya. A document entitled "Pipeline Easement," to which was attached a plat and legal description of the proposed easement, was sent to Mr. McElya together with a check for $2,250. The amount offered represented $25 per rod, based upon a proposed centerline 90 rods in length. Mr. McElya counter-offered $300 per rod.

Unable to reach an agreement with the property owner or his representative, Clajon filed a petition in condemnation, cause number JD–21. Special commissioners were appointed and notice of hearing issued. Mr. Audish, his counsel and a court reporter were present. During the June 2nd hearing before the commissioners, Clajon discovered an error in the legal description of the easement sought to be condemned and terminated the hearing. No award was made by the commissioners. On June 9th, without further notice to Audish and without hearing, the court signed an order dismissing the petition.

Late in the afternoon on June 9th, agents of Clajon met with Mr. McElya and presented him with a written offer for a natural gas pipeline easement across the Audish property. The easement sought on June 9th differed in several respects from that sought in the prior negotiation: the easement described was to be a 60–foot wide permanent easement rather than a 30–foot permanent easement plus a 30–foot

temporary, construction easement; the length proposed increased to 99.45 rods; and the easement was for two natural gas pipelines rather than for an unlimited number of natural gas and crude oil pipelines. For these rights Clajon offered more than $100 per rod. Mr. McElya refused the offer. On the following day, Clajon filed a second petition in condemnation, cause number JD–24, seeking to condemn the larger easement. The special commissioners heard JD–24 on June 23rd, assessed damages, and made their award. Neither of the appellants or their counsel attended the second hearing.

Upon learning that the original condemnation proceeding had been dismissed, Mr. Audish filed a motion to reinstate JD–21, asserting that the dismissal was granted without notice or hearing. The trial court reinstated JD–21 and after hearing awarded Mr. Audish $9,497.35 for attorney's fees and expenses incurred in connection with JD–21. The cause was thereafter dismissed.

■ In their first point of error, the appellants complain that the trial court erred in refusing to award treble, rather than actual, damages in connection with the dismissal of JD–21. The controlling statute, in effect when JD–21 was dismissed and JD–24 was filed, provided that if a plaintiff, such as Clajon, desired to dismiss a condemnation proceeding, upon motion and hearing, the court "shall make an allowance to the landowner for all necessary and reasonable attorneys' ... fees and all other expenses incurred...." Act of May 27, 1979, ch. 206, § 1, 1979 Tex.Gen.Laws 449 *repealed by* Property Code Act, ch. 576, § 6, 1983 Tex.Gen.Laws 3729. The next portion of the statute provided for punitive awards in special instances:

> [P]rovided, however, after a special commissioners hearing has been held and the special commissioners have made an award, the plaintiff will not be permitted to dismiss the condemnation proceedings merely to file a new petition in condemnation involving substantially the same taking against the landowner in an effort to secure a lower commissioners award

from a second special commissioners hearing. If the plaintiff does dismiss and files a second petition in condemnation to condemn from the same landowner the same substantial interest in the land as in the first petition in condemnation, the landowner is entitled to three (3) times the amount of all expenses allowed the landowner prior to the dismissal of the first petition in condemnation.

*Id.*

The purpose of this statute, formerly Tex.Rev.Civ.Stat.Ann. art. 3265 § 6 (Vernon Supp. 1980–81), was to prevent condemnors from dismissing their case following an unfavorable award from the commissioners, only to refile it again, often at great expense to the landowner. The statute expressly limited the circumstances in which treble damages were awarded to those instances in which an award had been made before the plaintiff dismissed and refiled the case specifically to avoid the unsatisfactory award. *Cassity v. Gulf States Utilities Co.,* 628 S.W.2d 86, 87 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.). The undisputed facts of the case before us indicate that no award was ever made in JD–21. The first prerequisite for allowing treble damages was not met. Appellants' first point of error is overruled.

■ In their second point of error appellants assert that the trial court erred in denying the plea in bar of Doris Jane Audish, wife of M.W. Audish. The condemnation suits originally named only Mr. Audish as defendant. Mrs. Audish was not named as a party until Clajon amended its petition three years after the commissioner's made their award. She responded to the amended petition by filing a plea in bar, praying that the court order Clajon to restore the easement to her and grant her attorneys' fees and expenses. The plea was denied.

It is undisputed that title to the land was recorded solely in the name of M.W. Audish. In responding to interrogatories and requests for admission, Mr. Audish twice asserted that he was the sole owner of the property. The claimed community property interest only arose during the deposition

of Mr. Audish. Clajon immediately amended its petition, joining Mrs. Audish as a party. After Mrs. Audish was brought into the suit, Mr. McElya represented both husband and wife. There is no contention by Mrs. Audish that Mr. Audish tried to defraud her of her interest in land nor is there a demand that half of the commissioners' award be designated as her separate property.

Mrs. Audish contends that since she was not given the opportunity to negotiate with Clajon and was not given notice of the commissioners' hearing, Clajon has not complied with the statutory provisions which confer appellate jurisdiction upon the county courts. She argues that any attempt to deal with her interests on appeal is ineffectual because the county court is without jurisdiction. She supports her contentions by reference to a situation in which a lessee, not a party to the administrative proceedings before the special commissioners, intervened at the trial court level and received an award of damages. In holding that the award to the intervening lessee was a nullity, the court of appeals said:

> Jurisdiction of the trial court in condemnation proceedings is appellate, and ... is limited to the issues and the parties involved in the administrative proceedings before the special commissioners....
>
> ....
>
> ... A claimant not joined as a party and not voluntarily joining in the proceedings before the commissioners is not within the jurisdiction of the administrative tribunal, and any attempt to deal with his interests thereafter on appeal is ineffectual.

*Board of Regents of University of Texas System v. Puett*, 519 S.W.2d 667, 770–71 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.).

*Puett* is distinguishable from the case before this court in a significant respect: the interests of the intervenor were not represented in the administrative proceedings. By virtue of the Texas Family Code, Mr. Audish did have the power to dispose of non-homestead realty held solely in his name, and thus Mrs. Audish's interests were represented. Section 5.24 of the Family Code specifically provides for the protection of third persons dealing with the spouse in whose name a title stands:

> (a) During marriage, property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in his or her name, as shown by muniment, contract, deposit of funds, or other evidence of ownership....
>
> (b) A third person dealing with a spouse is entitled to rely (as against the other spouse or anyone claiming from that spouse) on that spouse's authority to deal with the property if:
>
>> (1) the property is presumed to be subject to the sole management, control, and disposition of the spouse; and
>>
>> (2) the person dealing with the spouse
>>
>>> (A) is not a party to fraud upon the other spouse or another person; and
>>>
>>> (B) does not have actual or constructive notice of the spouse's lack of authority.

Tex.Fam.Code Ann. § 5.24 (Vernon 1975).

Since it is undisputed that title to the realty was recorded in the name of M.W. Audish only, it is presumed to be subject to his sole management, control, and disposition. Had this been a voluntary sale, Mr. Audish would have had the authority to convey the property without the joinder of his unnamed spouse and Clajon would have been entitled to rely on the ability of Mr. Audish to dispose of the property independently. *See Thomas v. Rhodes*, 701 S.W.2d 943, 945 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). We, therefore, hold that even though she was not named as a party to the proceedings, the interests of Mrs. Audish were represented by her husband and the county court did have jurisdiction as to Mrs. Audish. Appellants' second point of error is overruled.

In their third, fourth and fifth points of error, appellants complain that the trial court erred in ruling that the date of the commissioners' hearing in JD–24, June 23, 1981, was the date of taking. Under the then applicable statute, a plaintiff in a con-

demnation proceeding who wanted to gain the right of immediate entry and possession while litigation was pending could do so after the commissioners' hearing, provided it deposited with the court twice the amount adjudged by the commissioners and a bond for court costs. Tex.Rev.Civ.Stat. Ann. art. 3268 (Vernon 1968). Appellants allege that although the Notice of Award recited that Clajon's bond for court costs had been filed with the court on June 23, 1981, no such bond was filed until September 4, 1984. They contend that the date of deposit of the cost bond establishes the date of taking of the property, that until the bond was filed Clajon had no right of entry or possession under the law, that its entry was a trespass, and that Mr. Audish is entitled to damages and reasonable rental for the intervening three years. Mrs. Audish, who was not a party on September 4, 1984, contends that she is entitled to have the property valued as of the time of trial.

■ The record reflects that on June 23, 1981, Clajon stood ready to deposit its bond with the court. The court clerk refused to set an amount of the bond, preferring to have Clajon pay its costs as they were incurred. In similar situations, the courts of Texas have held that the failure of the condemnor to file a cost bond did not affect its right to enter and take possession of the property. *The City of Bryan v. Moehlman*, 155 Tex. 45, 282 S.W.2d 687, 670 (1955); *Sherrill v. Brazos River Transmission Electric Cooperative, Inc.*, 263 S.W.2d 669, 671 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.). The Supreme Court in approving the decision in *Sherrill* stated that the courts have held that the condemnation statutes are to be strictly construed for the protection of the landowner; the requirement of the cost bond is, however, for the protection of the court. *City of Bryan*, 282 S.W.2d at 690. We hold that Clajon fulfilled its obligation under the statute in tendering the bond, and the trial court did not err in setting June 23, 1981, as the date of taking. The choice of the county clerk in choosing an alternative method of securing its costs in no way prejudiced the rights of the landowners nor

jeopardized the landowners' award of compensation for the condemned property. It should not be allowed to alter the rights of the condemnor. With respect to the claim that Mrs. Audish's interest should be valued as of the time of trial, we have previously stated in this opinion that the interests of Mrs. Audish were determined with those of Mr. Audish. She is bound by the proceedings prior to her joinder. Points three, four, and five are overruled.

■ By their sixth point of error the appellants assert that the trial court abused its discretion in refusing to deem admitted certain requests for admission served upon Clajon. Clajon timely responded to the request. The response included objections to five of the twelve requests for admissions as inquiring into matters not germane to the proceeding. Four of the unanswered requests asked Clajon to admit that it had acquired "numerous easements from individuals," that its easements had been for oil or oil product pipelines, and that it had originally filed the petition in suit JD–21. The fifth required Clajon to admit that its Notice of Award, filed with the court, had stated that it had filed its cost bond on June 23, 1981. Appellants further complain that the response given to a sixth request was evasive, *i.e.* Clajon denied that it *first* attempted to file a cost bond on September 4, 1984.

The test for abuse of discretion is whether the action of the trial court was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985). We have reviewed the record with respect to appellants' contentions and Clajon's responses. Clajon's denial with respect to the cost bond is consistent with its prior sworn testimony given in court. We do not find it evasive. The requests to which Clajon filed objections were matters of record. Appellants were not prejudiced by the court's refusal to deem the requests admitted. We find no abuse of discretion. Error, if any existed, was harmless and not cause for reversal. Tex.R.App.P. 81(b). Point of error six is overruled.

Points of error seven through ten concern the trial court's grant of Clajon's motion for partial summary judgment. Upon motion the court decreed that (1) Clajon is vested with the power of eminent domain and right of condemnation; (2) Clajon made a proper determination that a public necessity exists for a natural gas pipeline; (3) Clajon has complied with the jurisdictional and procedural requirements to maintain a condemnation action; (4) Clajon made a good faith attempt to negotiate with defendants before instituting the proceeding; and (5) the date of taking is deemed to be June 23, 1981. Appellants attack the summary judgment, asserting that their summary judgment proof raised material fact issues and that the judgment ordered differs from the decree for which Clajon prayed.

■ We find no substantive differences between the prayer and the order of summary judgment. While we agree with appellants that the judgment incorrectly recites that prior to filing suit, Clajon negotiated with "Defendants" (plural) rather that "M.W. Audish or his representative," we do not find that this was an error of law or that the rights of the appellants were denied so as to cause rendition of an improper judgment and to require reversal. Tex.R. App.P. 81(b). Point of error eight, objecting to the form of the summary judgment order, is overruled.

The provisions of the court decree numbered above as 1, 2, 3, and 5 have been previously addressed in this opinion or are not attacked by the appellants. We find no error as to them. The major force of appellants' attack on the partial summary judgment is levied against the fourth statement: that Clajon made a good faith attempt to negotiate before filing the condemnation suit. In order to prevail on this issue, Clajon had to prove that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985).

■ Appellants assert that the affidavits of Mr. and Mrs. Audish raised a material fact issue as to the good faith negotiations of Clajon's representatives. Appellants arguments center around three basic contentions: that Clajon never negotiated for the easement sought to be condemned in JD-24, that Clajon never negotiated with Mrs. Audish, and that Clajon's amendment of the description of the easement is proof of fraud on the part of Clajon and an absence of good faith.

Clajon's summary judgment proof includes the affidavit of Mr. Bud Ray, a Clajon right-of-way-agent, who testified that at 4:00 p.m. on June 9, 1981, he and two other Clajon employees met with counsel for Mr. Audish and presented him with a written offer for a 60-foot wide easement across the property. The terms of the offer are also a part of the summary judgment evidence. Clajon offered to pay $10,800 for a two-line natural gas pipeline easement. The first line was to be laid immediately, the second within two years. The offer represented more than $100 per rod for the easement.

Affidavits in opposition to a motion for summary judgment shall be made on *personal* knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Tex.R.Civ.P. 166-A(e) (emphasis added). The affidavit of Mr. Audish states that Clajon never negotiated with him prior to filing either condemnation suit. The remainder of the affidavit was not made on personal knowledge. Its sentences begin: "I was advised that ..."; "I am informed that ..."; "I was told that ..."; and "An offer was made by my attorney ..." Such testimony does not constitute proper summary judgment proof. Mr. Audish does not show that he has personal knowledge of the negotiations alleged by Clajon to have taken place on June 9th with Mr. McElya, counsel for Mr. Audish. The affidavit, taken as a whole, does not create a fact issue as to the occurrence of those negotiations or as to the good faith of the negotiations. Appellants have not presented the affidavit of Mr. McElya, the only party who could refute the testimony of Clajon's employees.

**672**

The affidavit of Mrs. Audish states that she did not negotiate with Clajon nor authorize anyone else to do so. As previously stated, Mr. Audish, being the sole holder of title, had the power to manage, control, and dispose of the property without her joinder. Mrs. Audish's affidavit does not raise a fact issue as to whether Clajon conducted good faith negotiations prior to filing JD–24.

■ Appellants further contend that since the dismissal of JD–21 was improper and the cause was subsequently reinstated, the negotiations of June 9th constituted a settlement offer of JD–21 and did not concern the easement sought in JD–24, filed on June 10th. Hence, they argue there were no negotiations prior to the filing of JD–24. We do not accept appellants' argument. The easement described in the written offer of June 9th was the easement sought in the suit filed June 10th, JD–24. Although concerning the same property owned by Mr. Audish, it is not the identical easement sought in JD–21. The fact that JD–21 was reinstated so that Audish could have a hearing on his expenses does not alter the fact that the negotiations on June 9th concerned the easement described in JD–24. Furthermore, the record reflects on the afternoon of June 9th, JD–21 did not exist.

Appellants attack the good faith of the negotiations based upon Clajon's amendment of its pleadings before the jury trial for damages. By 1984, Clajon realized it did not need to install the second pipeline and amended its petition accordingly. Appellants contend that review of the record will show a carefully formulated plan to reduce the request just before trial and thus make the price offered appear to be greater than or equal to the court's award. In such an instance the landowner must pay the cost of the appeal. Tex.Rev.Civ. Stat.Ann. art. 3267 (Vernon 1968). The uncontroverted evidence reflects that on June 9, 1981, Clajon offered $10,800 to Audish, anticipating it would lay one pipeline immediately and another two years later. The compensation was equal to $5,400 per pipeline. By trial time, only one easement was necessary; the compensation offered was the equivalent of $10,800 per pipeline. During the negotiations for two pipelines on June 9, 1981, Mr. McElya's only counter-offer was for $30,000. Expressed in other terms, the counter-offer was for $15,000 per pipeline. By this analysis we reason that had Clajon originally offered $10,800 for an easement of one pipeline, the counter-offer of McElya was still for $4,200 more per pipeline and the parties would still have failed to agree on a price.

We find no issue of material fact raised by appellants. The trial court did not err in granting Clajon's partial summary judgment. Appellants' seventh and ninth points of error are overruled.

■ In their tenth point of error appellants' contend that the trial court erred in refusing to sever the issues determined by the partial summary judgment in order to allow an immediate appeal before the trial on the issue of land value. Severability relates only to causes of action not to issues. *Johnson v. Karam* 466 S.W.2d 806, 811 (Tex.Civ.App.—El Paso 1971, writ ref'd n.r.e.). Although Tex.R.Civ.P. 41 states that "[A]ny claim against a party may be severed and proceeded with separately," this rule has been construed to mean that a claim may be severed only if it is part of a controversy which involves more than one cause of action. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982). The filing of a motion for partial summary judgment is not an indication that an independent cause exists. The rule allowing partial summary judgment allows the court to dispose of certain issues without adjudicating the rights of the parties on the entire case, often simplifying the issues for trial. Tex.R.Civ.P. 166–A. In the condemnation proceeding there existed but one cause of action. We find that the trial court did not err in refusing to sever the issues of the right to take and the value of the land. Point of error ten is overruled.

Appellants' eleventh point of error contends that the trial court erred in denying their motion to disqualify the law firm of

Simmang, Boethel and Hall as counsel. The affidavit of Duncan W. Hall, an associate with the firm, was included in the summary judgment proof. The substance of the affidavit is that Mr. Hall had personal knowledge that the original Notice of Hearing in Cause JD–24 directed to Mr. Audish, together with the return showing service of notice, were delivered to the Simmang law firm, were stored in the firm file, and were later personally delivered to the commissioners by Mr. Hall. Appellants allege that the testimony of the affidavit was relevant to material jurisdictional issues such that the law firm should have withdrawn from the case to satisfy Disciplinary Rule 5–102.

DR 5–102(A) provides:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)

. . . .

DR 5–101(B) provides in pertinent part:

(B) [H]e or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

Supreme Court of Texas, Rules Governing the State Bar of Texas art. XII, § 8 (Code of Professional Responsibility) DR 5–101, 5–102 (1973).

■ The record does not show that the testimony of Mr. Hall was contested nor do the appellants urge a different version of the facts alleged by Mr. Hall. The testimony was strictly a formality of the type contemplated by the exception created in DR 5–101(B)(2) above. The "black-letter" exceptions to our rules of professional conduct are as much a part of our written law as the rules themselves. DR 5–101(B) was created by the same order of the Supreme Court of Texas as was DR 5–102(A). To ignore the restrictions of DR 5–101(B) in enforcing DR 5–102(A) would be misapplication of the law. It would create a hardship on clients and attorneys alike, requiring changes of counsel in the course of many litigated matters, resulting in needless expense to the clients and further burdening of our courts. We find that the affidavit of Mr. Hall is not a basis for disqualification of counsel. Point of error eleven is overruled.

We affirm the judgment of the trial court.